1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KESSLER TOPAZ MELTZER
   & CHECK, LLP
Geoffrey C. Jarvis (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gjarvis@ktmc.com

-and-

Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com

*Lead Counsel for Lead Plaintiff and
the Settlement Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAY RABKIN, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>v.<br><br>LION BIOTECHNOLOGIES, INC., MANISH SINGH, MICHAEL HANDELMAN, and KAMILLA BJORLIN,<br><br>              Defendants. | Case No. 3:17-cv-02086-SI<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hon. Susan Illston<br><br>Date:        April 12, 2019<br>Time:       10:00 a.m.<br>Courtroom:  1-17th Floor (San Francisco) |

### NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 12, 2019 at 10:00 a.m., in Courtroom 1 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Susan Illston presiding, the Court-appointed Lead Plaintiff Jay Rabkin will and hereby does move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"): (1) granting final approval of the proposed settlement ("Settlement") of the above-captioned action ("Action"); (2) certifying the proposed class ("Settlement Class") for purposes of effectuating the Settlement; and (3) approving the proposed plan for allocating the net proceeds of the Settlement to eligible Settlement Class Members ("Plan of Allocation").

This motion is based upon (i) this Notice of Motion and Motion and the Memorandum of Points and Authorities that follow; (ii) the accompanying Declaration of Jennifer L. Joost in Support of (I) Lead Plaintiff's Motion for Final Approval of Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joost Declaration" or "Joost Decl."), and the exhibits thereto;[1] (iii) the Stipulation of Settlement and Release dated as of September 28, 2018, filed previously with the Court (ECF No. 121) ("Stipulation");[2] (iv) the pleadings and records on file in this Action; and (v) other such matters and argument as the Court may consider at the hearing of this motion. This motion is made pursuant to the Court's November 30, 2018 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 129) ("Preliminary Approval Order").

Proposed orders will be submitted with Lead Plaintiff's reply papers on March 29, 2019, after the deadline for objecting or requesting exclusion from the Settlement Class has passed.[3]

---

[1] All exhibits referenced herein are attached to the Joost Declaration.

[2] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

[3] To date, there have been no objections and this motion is currently unopposed.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ vii

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 3

        A.      The Settlement Meets the Standards for Final Approval under Rule 23(e) ............... 3

        B.      The Amount Offered in Settlement ........................................................................ 5

        C.      Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ....... 6

        D.      The Settlement Was Negotiated at Arm's-Length .................................................... 7

        E.      The Settlement Is Fair Given the Costs, Risks, and Delay of Further Litigation,
                Trial, and Appeal .................................................................................................. 8

        F.      The Strength of Lead Plaintiff's Case ................................................................... 10

                1.      Risks to Obtaining Class Certification ........................................................ 10

                2.      Risks to Proving Defendants' Liability and Damages .................................. 10

        G.      The Risk of Maintaining Class Action Status through Trial ..................................... 12

        H.      Extent of Discovery Completed and Stage of Proceedings ...................................... 13

        I.      The Experience and Views of Counsel .................................................................. 14

        J.      The Presence of a Governmental Participant ......................................................... 15

        K.      The Reaction of the Settlement Class to the Settlement to Date .............................. 15

        L.      The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the
                Settlement ........................................................................................................... 16

                1.      The Proposed Method of Processing Claims and Distributing Settlement
                        Proceeds Is Effective ................................................................................ 16

                2.      The Requested Attorneys' Fees and Expenses Are Fair and Reasonable ..... 17

                3.      The Supplemental Agreement Does Not Affect the Fairness of the
                        Settlement ................................................................................................ 18

                4.      The Settlement Treats Settlement Class Members Equitably ....................... 18

III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE .............. 19

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................... 20

1

V.      THE NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 ........................... 21

VI.     CONCLUSION ................................................................................................................. 23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Amgen Inc. Sec. Litig.*,
  No. 07-cv-02536-PSG, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................9, 16

*Ansell v. Laikin*,
  No. 10-cv-09292-PA, 2012 WL 13034812 (C.D. Cal. July 11, 2012)........................................19

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) .......................................................10

*Banerjee v. Avinger, Inc.*,
  No. 17-cv-03400-CW, 2018 WL 6040194 (N.D. Cal. Oct. 24, 2018)........................................17

*In re Biolase, Inc. Sec. Litig.*,
  No. 13-cv-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .........................................6

*In re Broadcom Corp. Sec. Litig.*,
  No. 01-cv-00275-DT, 2005 WL 8153007 (C.D. Cal. Sept. 14, 2005)..........................................6

*California v. eBay, Inc.*,
  No. 12-cv-05874-EJD, 2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) ........................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................................................12

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................................. *passim*

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .....................................................................................................4

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................................6, 15, 20

*Dura Pharms, Inc. v. Broudo*,
  544 U.S. 336 (2005) ...............................................................................................................8, 19

*Fowler v. Wells Fargo Bank, N.A.*,
  No. 17-cv-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019)...................................17, 22

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-cv-01365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .........................................4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).................................................................................................4, 5

*Harris v. Vector Mktg. Corp.*,
    No. 08-cv-05198-EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ......................................7

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ..............................16, 22

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F. 3d 713 (11th Cir. 2012)...........................................................................................10

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 09-cv-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ......................................6

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................................13, 14, 22

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ..............................................................................................................2, 10

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) .......................................5

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................................................................22

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................................8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...............................................................................................13

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05-cv-00179-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ......................................6

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)........................................................................................3, 5, 13

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) .................................................................................................21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................14, 15

*In re Netflix Privacy Litig.*,
    No. 11-cv-00379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).....................................8

*Nguyen v. Radient Pharm. Corp.*,
    No. 11-cv-00406-DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)...............................12, 18

*Nobles v. MBNA Corp.*,
    No. 06-cv-03723-CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)..................................8, 10

*Officers for Justice v. Civil Serv. Com. of the City and Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................................4, 5

*In re OmniVision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007)........................................................................................12

*In re Oracle Sec. Litig.*,
    No. 90-cv-00931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ......................................19

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .......................................................................................................17

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-05138-VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......................................8

*In re Rambus Inc. Derivative Litig.*,
    No. 06-cv-03513-JF, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .............................................13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................................................................14

*Satchell v. Fed. Express Corp.*,
    No. 03-cv-2659-SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...............................................7

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11-cv-08331-CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)...........................................5

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ................................................................................................22

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)........................................................................................................4

*Tait v. BSH Home Appliances Corp.*,
    No. 10-cv-00711-DOC, 2015 WL 4537463 (C.D. Cal. July 27, 2015) .........................................9

*Thomas v. Magnachip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 WL 3879193 (N.D. Cal. July 18, 2016) .........................................18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)............................................................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    229 F. Supp. 3d 1052 (N.D. Cal. 2017).......................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................................12

**Statutes**

15 U.S.C. § 78u-4......................................................................................................20, 21, 22

Class Action Fairness Act, 28 U.S.C. § 1715.......................................................................15

Private Securities Litigation Reform Act of 1995.........................................8, 18, 21, 22

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Fed. R. Civ. P. 23(c) ..............................................................................................12, 21

Fed. R. Civ. P. 23(e) ........................................................................................ *passim*

Fed. R. Civ. P. 41(a) ...............................................................................................1

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should approve the proposed $3,250,000 Settlement as fair, reasonable, and adequate under Rule 23(e).

2.    Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

3.    Whether the Court should finally certify the Action as a class action pursuant to Rules 23(a) and (b)(3) for the purposes of effectuating the Settlement only.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Plaintiff Jay Rabkin, through his counsel Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz" or "Lead Counsel"), respectfully submits this memorandum of points and authorities in support of his motion, pursuant to Rule 23(e), requesting (i) final approval of the proposed Settlement of the Action; (ii) approval of the proposed Plan of Allocation; and (iii) certification of the Settlement Class for purposes of effectuating the Settlement.

## I.    INTRODUCTION

Subject to this Court's final approval, Lead Plaintiff, through Lead Counsel, has obtained a Settlement for $3,250,000 in cash in exchange for the dismissal of all claims brought in this Action and a full release of claims against defendants Lion Biotechnologies, Inc. (n/k/a Iovance Biotherapeutics, Inc.) ("Lion" or the "Company"),[4] Manish Singh ("Singh"), and Michael Handelman ("Handelman") (collectively, "Defendants"), and the other Defendant Releasees.[5] As described below and in the accompanying Joost Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks. Notably, the Settlement represents approximately 27% of the Settlement Class's *maximum* potential damages of $12 million as estimated by Lead Plaintiff's damages expert based on an event study and a reasonable estimation of the number of damaged shares. This recovery far exceeds the median recovery as a percentage of damages in recent securities class action settlements.[6]

---

[4]  Lion Biotechnologies, Inc. changed its name to Iovance Biotherapeutics, Inc. on June 27, 2017, and the Company's NASDAQ ticker symbol changed to "IOVA" on June 28, 2017.

[5]  In connection with the Settlement, Lead Plaintiff intends to voluntarily dismiss his claims against Kamilla Bjorlin, who also was named as a defendant in this Action. Lead Plaintiff will file a notice of voluntary dismissal of his claims against Ms. Bjorlin pursuant to Rule 41(a)(i) of the Federal Rules of Civil Procedure following the Effective Date. Ms. Bjorlin is not a party to the Stipulation (or the Settlement), and the Stipulation (and the Settlement) is not contingent on the dismissal of Ms. Bjorlin. When capitalized herein, the term 'Defendants' refers to Lion, Singh, and Handelman. When appearing lowercase, the term 'defendants' refers to Lion, Singh, Handelman, and Bjorlin

[6]  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements - 2017 Review and Analysis*, Cornerstone Research (2018), http://securities.stanford.edu/research-reports/1996-2017/Settlements-Through-12-2017-Review.pdf ("Cornerstone Research") (noting median settlement as a percentage of damages was 5.2% in 2017). A copy of Cornerstone Research is attached as Exhibit 2 to the Joost Declaration.

---

As described below and in the accompanying Joost Declaration, the decision to settle the Action was well-informed by an extensive investigation, hard-fought litigation, and arm's-length negotiations between the Parties under the supervision of an experienced mediator, Mr. Jed D. Melnick, Esq. of JAMS.[7] While Lead Plaintiff and Lead Counsel believe that the claims against Defendants are meritorious, they also recognize that, in the absence of a settlement, they faced substantial risks to obtaining any recovery for the Settlement Class—let alone a recovery greater than the Settlement Amount.

In reaching the Settlement, Lead Plaintiff and Lead Counsel carefully considered the numerous risks associated with continuing the litigation. For example, at class certification, Lead Plaintiff would face defendants' challenges to market efficiency, as much of defendants' alleged misconduct occurred prior to Lion's NASDAQ listing in February 2015. And, even if Lead Plaintiff could establish that the fraud-on-the-market presumption of reliance applied here, defendants would likely assert a lack of price impact argument, which, if successful, would narrow the certified class and limit recoverable damages.

Defendants also challenged loss causation at the pleading stage, asserting that Lead Plaintiff would be unable to link the allegations of their misconduct to recoverable investment losses as the first two alleged disclosures (i.e., May 14, 2014 and November 12, 2014) were insufficiently corrective and the third corrective disclosure (i.e., April 10, 2017) did not result in a statistically significant reaction. Defendants also vigorously argued at the pleading stage that because they did not "make" the statements in the promotional articles at the center of the alleged claims, Lead Plaintiff would be unable to establish their liability under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ("*Janus*"). Lead Plaintiff fully expected defendants to reassert these arguments in support of a motion for summary judgment which, if successful, would have prevented Lead Plaintiff from recovering any damages on behalf of the Settlement Class.

Additionally, Lead Plaintiff faced a risk that further litigation, even if successful, could result in a smaller recovery, or no recovery at all, given that the insurance proceeds available to fund a settlement or

---

[7]  Lead Plaintiff respectfully refers the Court to the Joost Declaration filed herewith. The Joost Declaration contains a detailed description of, among other things, the nature of the claims asserted, the procedural history of the Action, the negotiations leading to the Settlement, and the terms of the Plan of Allocation. All exhibits referenced herein are attached to the Joost Declaration.

1    satisfy a future judgment in the Action were also being used to pay defense costs. The foregoing risks all

2    underscore the meaningful Settlement Amount obtained at this juncture in the litigation.

3        The Court granted preliminary approval of the Settlement on November 30, 2018 (ECF No. 129).

4    By the same Order, the Court approved the process by which Settlement Class Members would receive

5    notice of the Settlement and submit claims, objections, or requests for exclusion. To date, the Court-

6    authorized Claims Administrator, JND Legal Administration ("JND"), has disseminated over 21,200 copies

7    of the Notice to potential Settlement Class Members and nominees. *See* Declaration of Robert Cormio

8    ("Cormio Decl.") attached as Exhibit 3 to the Joost Declaration, ¶ 12. The Notice, Claim Form, and other

9    key Settlement documents have also been made available on a dedicated website maintained for the

10   Settlement by JND. *Id.* ¶ 16. In addition, the Summary Notice was published in *Investor's Business Daily*

11   and transmitted over the *PRNewswire*. *Id.* ¶ 13. While the deadline to submit objections and requests for

12   exclusion from the Settlement Class has not yet passed, no Settlement Class Member has objected to the

13   Settlement or Plan of Allocation (Joost Decl., ¶¶ 9, 48, 54); nor has any Settlement Class Member sought

14   exclusion from the Settlement Class to date. Cormio Decl., ¶ 19.

15       For these reasons, Lead Plaintiff submits that the Settlement readily meets the standards for final

16   approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class. Accordingly,

17   Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement. In addition, the Plan

18   of Allocation, which was developed with the assistance of Lead Plaintiff's damages expert, is a fair and

19   reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## II.    ARGUMENT

### A.    The Settlement Meets the Standards for Final Approval under Rule 23(e)

22       Rule 23(e) requires judicial approval for any compromise or settlement of class action claims. When

23   a settlement is binding on class members (as this one is), the Court may approve it "only after a hearing and

24   only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).

25       The determination of whether a settlement is fair, reasonable, and adequate is committed to the

26   sound discretion of the court. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)

27   ("Review of the district court's decision to approve a class action settlement is extremely limited."). A

28   court's review, however, should be "limited to the extent necessary to reach a reasoned judgment that the

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (a "court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").[8] Moreover, the Ninth Circuit has recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Com. of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). This is particularly true for class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (recognizing "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-01365-CW, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

As amended on December 1, 2018, Rule 23 provides that the Court should determine whether a proposed settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Consistent with these factors, courts in the Ninth Circuit have long considered the following eight factors in determining whether a class action settlement should be approved:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

---

[8] Unless otherwise indicated, internal citations and footnotes have been omitted and emphasis has been added.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MPA
CASE NO. 3:17-CV-02086-SI                                                                 4

proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) ("*Churchill*"); *see also Hanlon*, 150 F.3d at 1026.[9] The "relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *5 (N.D. Cal. May 11, 2018).

As demonstrated herein and in the Joost Declaration, the Settlement readily satisfies each of the Rule 23(e)(2) and Ninth Circuit *Churchill* factors, meets the favored public policy goal of resolving securities class action claims, and warrants this Court's final approval.

**B.    The Amount Offered in Settlement**

The amount of a settlement "is generally considered the most important [approval factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). In evaluating the fairness of a settlement, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624.[10]

---

[9]    The December 1, 2018 amendment to Rule 23(e)(2) is not intended to "displace any factor" used by the Circuit Courts to assess final settlement approval, but rather to focus on core concerns to guide the approval decision. *See* Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The factors in amended Rule 23(e)(2) are entirely consistent with the factors used by the Ninth Circuit to assess final settlement approval and each of these factors are addressed in the sections below.

[10]    *See also Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-08331-CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the result achieved is significant. The Settlement provides for $3.25 million—a substantial portion (i.e., approximately 27%) of the Settlement Class's estimated *maximum* potential damages of $12 million. Joost Decl., ¶¶ 6, 37. This result far exceeds the median securities class action recovery as a percentage of damages, which was 5.2% in 2017. *See* Joost Decl., Ex. 2, Cornerstone Research, at 8. *See also In re Biolase, Inc. Sec. Litig.*, No. 13-cv-1300-JLS, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement representing "approximately 8% of the maximum recoverable damages . . . equals or surpasses the recovery in many other securities class actions"); *Zynga*, 2016 WL 537946, at *11 ("Settlement Amount represent[ing] approximately 14 percent of likely recoverable aggregate damages at trial" was "well within the range of percentages approved in other securities-fraud related actions . . .").[11] In comparison, if the Action had continued, Lead Plaintiff and the Settlement Class faced numerous risks—as defendants adamantly deny any wrongdoing and would continue to aggressively litigate their defenses through class certification, summary judgment, trial, and appeals. If certain of defendants' loss causation and damages arguments were accepted, the damages that could be established at trial would be substantially less than the $12 million estimated by Lead Plaintiff's damages expert, assuming any damages could be proven at all. Additionally, the costs of continued litigation would be high and it is unclear how much of the available insurance proceeds—also being used to pay defense costs—would remain to fund a settlement or satisfy a future judgment in an amount larger than the Settlement.

### C.    Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2)(A) favors final approval of the Settlement because Lead Plaintiff and Lead Counsel "have adequately represented the class." Since his appointment as lead plaintiff in July 2017, Lead Plaintiff has actively monitored and engaged in the prosecution and resolution of the Action on

---

[11] *See also McPhail v. First Command Fin. Planning, Inc.*, No. 05-cv-00179-IEG, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding $12 million settlement recovering 7% of estimated damages fair and adequate); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09-cv-00419-MMD, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of maximum damages that plaintiffs believe could be recovered at trial and noting amount is within the median recovery in securities class actions settled in the last few years); *In re Broadcom Corp. Sec. Litig.*, No. 01-cv-00275-DT, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving settlement representing 2.7% of damages and finding percentage as "not [] inconsistent with the average recovery in securities class action[s] . . .").

behalf of the Settlement Class. Lead Plaintiff regularly communicated with Lead Counsel on litigation strategy and case developments, reviewed significant Court filings, and conferred with Lead Counsel prior to the mediation and during the Parties' negotiation of the Stipulation. *See* Declaration of Jay Rabkin, attached as Exhibit 1 to the Joost Declaration, ¶¶ 4-5, 9. In addition, Lead Plaintiff—an investor who purchased Lion common stock during the Class Period at artificially inflated prices and suffered damages when the truth was disclosed—has claims that are typical of other Settlement Class Members and has no conflict of interests with them.

Lead Counsel, likewise, has "adequately represented the class" throughout the litigation. Among other things, Lead Counsel (i) conducted a comprehensive factual investigation of the claims at issue in the Action; (ii) prepared the detailed Amended Complaint based on its factual investigation; (iii) briefed, and largely prevailed, on defendants' multiple motions to dismiss the Amended Complaint; (iv) served document requests and engaged in several meet and confers with defendants regarding the scope of the discovery requested and defendants' objections thereto; (v) reviewed more than 12,000 pages of documents Lion previously produced in connection with the Securities and Exchange Commission's ("SEC") investigation; (vi) consulted with a damages expert; and (vii) engaged in arm's-length settlement negotiations, including formal mediation. Joost Decl., ¶¶ 14-35; 65. With the knowledge gleaned from these efforts, Lead Counsel carefully considered the strengths and weaknesses of the claims asserted and the risks of further litigation when agreeing to resolve the Action and firmly believes the Settlement represents an excellent recovery in the best interests of the Settlement Class.

### D.    The Settlement Was Negotiated at Arm's-Length

Rule 23(e)(2)(B) also supports final approval because the Settlement was reached only after arm's-length negotiations facilitated by an experienced and well-respected neutral. Joost Decl., ¶¶ 29-30. In July 2018, the Parties engaged in a formal in-person mediation session with Jed D. Melnick, Esq. of JAMS, which included the exchange of detailed mediation statements addressing their respective positions on liability and damages. *Id.* At the mediation, Mr. Melnick addressed the relevant issues with the Parties and played a key role in bringing about the Settlement. *See Satchell v. Fed. Express Corp.*, No. 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an

experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes. This further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.").

Following the mediation and their agreement-in-principle to resolve the Action, the Parties spent additional weeks negotiating the specific terms of the Settlement before moving for preliminary approval in September 2018. Joost Decl., ¶¶ 31-32. Indeed, courts have afforded a *presumption* of fairness and reasonableness of a settlement agreement where, as here, that agreement was the product of non-collusive, arms'-length negotiations. *See In re Netflix Privacy Litig.*, No. 11-cv-00379-EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).

### E.      The Settlement Is Fair Given the Costs, Risks, and Delay of Further Litigation, Trial, and Appeal

Rule 23(e)(2)(C)(i) and the second *Churchill* factor further support final approval of the Settlement, as courts consistently recognize that the expense, complexity, and possibly duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (finding "the cost, complexity and time of fully litigating the case" rendered the settlement fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Class action litigation is inherently complex. *Nobles v. MBNA Corp.*, No. 06-cv-03723-CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). This securities class action, prosecuted under the more restrictive provisions of the Private Securities Litigation Reform Act of 1995

1   ("PSLRA") is no exception.[12] As discussed below and in the Joost Declaration, Lead Plaintiff faced

2   substantial litigation risks if the Action continued, including risks to successfully obtaining

3   certification of the fully-pled class, and establishing defendants' liability, loss causation, and the full

4   amount of damages. Joost Decl., ¶¶ 36-42. In addition, at least two of the defendants would likely

5   have asserted their Fifth Amendment rights in response to discovery requests in this Action which

6   would have presented practical problems in developing the record concerning their conduct—conduct

7   central to the alleged scheme. Id. ¶ 40 n.11.

8         Here, the Parties had just begun discovery when the Settlement was reached. Joost Decl., ¶ 8.

9   Barring settlement, continued litigation of the Action—through substantial additional fact discovery,

10  expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, and

11  post-trial appeals—would have undoubtedly been a long and expensive endeavor. See In re Amgen

12  Inc. Sec. Litig., No. 07-cv-02536-PSG, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial

13  of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings

14  on summary judgment and at trial could have added years to the litigation."). Moreover, the insurance

15  proceeds available to fund a settlement or satisfy a future judgment in this Action would continue to

16  be depleted by defense costs. See Zynga, 2016 WL 537946, at *10 ("continuing litigation would not

17  only be costly—representing expenses that would take away from any ultimate classwide recovery—

18  but would also delay resolution and recovery for Settlement Class Members"). In contrast, the

19  Settlement provides an immediate and substantial recovery for the Settlement Class—approximately

20  27% of maximum recoverable damages—without exposing Settlement Class Members to the risk,

21  expense, and delay of continued litigation. See Tait v. BSH Home Appliances Corp., No. 10-cv-

22  00711-DOC, 2015 WL 4537463, at *7 (C.D. Cal. July 27, 2015) (contrasting need to discount any

23  judgment by "the delay the class members would face in actually obtaining that judgment" with the

24  fact that the "proposed settlement provides certain, timely, and substantial relief").

25

26  ───────────────
    [12] Indeed, "the heightened pleading requirement of the PSLRA and the application of Dura Pharms,
27  Inc. v. Broudo, 544 U.S. 336 (2005), which poses significant risks to plaintiffs' ability to survive . . .
    summary judgment and prevailing at trial, suggest the settlement here is prudent." In re Portal
28  Software, Inc. Sec. Litig., No. 03-cv-05138-VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26,
    2007).

1

### F.    The Strength of Lead Plaintiff's Case

2      Courts also consider the strength of plaintiffs' case—the first *Churchill* factor, when evaluating a

3  proposed class action settlement. While Lead Plaintiff and Lead Counsel are confident in the merits of their

4  claims and believe that they could have ultimately prevailed against defendants, they recognize the

5  numerous risks and uncertainties that would accompany further litigation of these claims. Joost Decl.,

6  ¶¶ 36-42. Lead Plaintiff and Lead Counsel also recognize that plaintiffs have prosecuted many

7  securities actions believing their cases to be meritorious, only to lose on summary judgment, at trial,

8  or on appeal. *See Nobles*, 2009 WL 1854965, at *2 (noting that, although "Plaintiff's claim has

9  survived a motion to dismiss, [] success is not guaranteed if this matter were to proceed to jury

10  trial.").[13]

11              ### 1.    Risks to Obtaining Class Certification

12      In the absence of settlement, Lead Plaintiff would have moved to certify the class. Joost Decl.,

13  ¶ 39. At this stage, defendants would have challenged application of the fraud-on-the-market

14  presumption of reliance, arguing that Lion's common stock did not trade in an efficient market prior

15  to its listing on the NASDAQ in February 2015. *Id.* ¶ 39. In support, Defendants would point to the

16  absence of both significant analyst coverage and trading before the NASDAQ listing. *Id.* Even if Lead

17  Plaintiff could establish that the presumption of reliance applied here (which he believes he could),

18  defendants likely would rebut this presumption by attempting to establish a lack of price impact (as

19  to both the challenged statements and alleged corrected disclosures). *Id.* Acceptance of this argument

20  by the Court would narrow the certified class and limit recoverable damages.

21              ### 2.    Risks to Proving Defendants' Liability and Damages

22      Lead Plaintiff faced risks to establishing defendants' liability if the Action continued. *First*,

23  Lead Plaintiff faced challenges to proving that defendants made any false or misleading statements.

24  With respect to the challenged statements contained in the promotional articles at the center of this

25

26  [13] *See also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F. 3d 713 (11th Cir. 2012) (overturning jury verdict and award in favor of plaintiff on loss causation grounds); *In re Apollo Grp., Inc. Sec.*

27  *Litig.*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying a unanimous jury verdict for plaintiff following a two-month trial).

28

case, defendants vigorously argued in their motions to dismiss and during the Parties' settlement discussions that the articles' authors—not defendants—"made" the statements and therefore Lead Plaintiff would be unable to establish liability under the Supreme Court's decision in *Janus*.[14] Joost Decl., ¶ 40. Although this Court found Lead Plaintiff had alleged sufficient facts to establish maker liability as a pleading matter, Lead Plaintiff would bear a heavier burden on this issue at summary judgment and trial. *Id*. *Second*, defendants would assert that the statements in its Sarbanes-Oxley certifications and risk disclosures were incomplete at most and, in any event, not misleading. *Id*. *Third*, Defendants would argue that the challenged statements were immaterial, asserting that the promotional articles were factually accurate and provided no new information to investors (except for the authors' failure to disclose that they were paid for their work) and would bolster this assertion with the lack of a statistically significant reaction on April 10, 2017 when, as Lead Plaintiff alleged, the scheme was fully disclosed. *Id*.

Lead Plaintiff also faced formidable challenges to loss causation and damages. With respect to loss causation, defendants would continue to assert that Lead Plaintiff would be unable to link the allegations of defendants' misconduct to recoverable investment losses because the first two alleged corrective disclosures on May 14, 2014 and November 12, 2014 were insufficiently corrective and the third disclosure on April 10, 2017 did not result in a statistically significant reaction. Joost Decl., ¶ 41. Specifically, for the disclosure on May 14, 2014, defendants asserted at the pleading stage and during mediation that this announcement revealed *at most* a risk that the SEC investigation into stock promotion activities could later reveal wrong doing at Lion (but possibly not). *Id*. And, for the November 12, 2014 disclosure, defendants argued at the pleading stage and during mediation that this announcement, regarding Singh's departure from Lion, had nothing to do with the conduct alleged, and that the movement in Lion's price following this announcement reflected market

---

[14] "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S. at 142-43.

1    disappointment in an executive departure and was unrelated to any issue touching on stock promotion,

2    let alone fraud. *Id.* Indeed, the elimination of even one of the alleged corrective disclosures would

3    have considerably reduced damages. Relatedly, Lead Plaintiff faced the significant risk of

4    disaggregating losses and proving that the decline in the Company's stock price on May 14, 2014,

5    was the result of Lion's announcement of the SEC subpoena, as opposed to its statements regarding

6    its continuing losses in its Form 10-Q filed that same day. *Id.* ¶ 42.

7        Resolution of these loss causation and damages issues would hinge upon extensive expert

8    discovery and testimony. Although Lead Plaintiff believes he would have been able to present expert

9    testimony to meet his burden on loss causation and damages, "establishing damages at trial would

10   lead to a 'battle of experts'. . . with no guarantee whom the jury would believe." *In re Cendant Corp.*

11   *Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). *See also Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406-

12   DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving securities class action settlement

13   where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse

14   divergent positions of expert witnesses in a complex area of law" and "[t]he outcome of that analysis

15   is inherently difficult to predict and risky"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735,

16   744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any

17   certainty which testimony would be credited, and ultimately, which damages would be found to have

18   been caused by actionable, rather than the myriad nonactionable factors such as general market

19   conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

20       Simply put, had this Action proceeded, there existed risk and uncertainty concerning liability,

21   causation, and damages. Instead, if the Settlement is approved, the Settlement Class will receive a

22   meaningful recovery of their damages without undertaking these risks, and others, which weighs

23   strongly in favor of the Settlement.

24       **G.    The Risk of Maintaining Class Action Status through Trial**

25       When the Settlement was reached, Lead Plaintiff's motion for class certification was due to

26   be filed on September 28, 2018. Joost Decl., ¶ 32. Although Lead Plaintiff is confident that he would

27   succeed in obtaining certification of the fully-pled class, the Settlement removes any uncertainty with

28   respect to certification. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal.

1  2007) ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely

2  lose their chance at recovery entirely. . . . As Defendants agree to class certification for the purposes

3  of the Settlement, there is much less risk of anyone who may have actually been injured going away

4  empty-handed.").[15]

5  **H.    Extent of Discovery Completed and Stage of Proceedings**

6  The fifth *Churchill* factor considers the stage of the proceedings and the amount of

7  information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *In*

8  *re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d at 459; *In re Rambus Inc. Derivative Litig.*, No. 06-cv-

9  03513-JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). "In the context of class action

10  settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have

11  sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska*

12  *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Immune Response Sec. Litig.*, 497 F. Supp.

13  2d 1166, 1174 (S.D. Cal. 2007) (finding informal discovery and investigation sufficient for parties to

14  have a "clear view" of their case).

15  During the course of this Action, Lead Counsel spent significant time and resources analyzing

16  and litigating the legal and factual issues of this case. These efforts included, among others:

17  (i) conducting an extensive investigation prior to filing the Amended Complaint;[16] (ii) researching

18  and preparing the detailed Amended Complaint; (iii) briefing Defendants' motions to dismiss the

19  Amended Complaint and preparing for argument on the motions; (iv) reviewing more than 12,000

20  pages of documents that Lion previously produced to the SEC in connection with its investigation;

---

22 [15] This factor would support Settlement even if the Lead Plaintiff obtained class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

25 [16] This investigation included, *inter alia*, review and analysis of: (i) Lion's filings with the SEC; (ii) press releases and other public statements issued by Lion and the other defendants; (iii) analyst, media and news reports about Lion; (iv) investigatory reports by Richard Pearson of *Seeking Alpha* and Adam Feuerstein of *TheStreet.com*; (v) documentary materials Lead Counsel obtained from the SEC's investigation into Lion, Lidingo Holdings LLC ("Lidingo"), Lavos LLC ("Lavos"), and ImmunoCellular Therapeutics, Ltd., as well as the SEC's findings based upon its investigation; and (vi) Lion's publicly-available trading data. Joost Decl., ¶ 16.

(v) serving document requests on defendants and engaging in several meet and confers regarding the scope of the discovery requested and defendants' objections thereto; (vi) consulting with a damages expert; and (vii) engaging in settlement negotiations, including formal mediation, with Defendants. Joost Decl., ¶ 65. As a result, Lead Plaintiff and Lead Counsel were both sufficiently familiar with the strengths and weaknesses of the case to make an informed decision regarding settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval).

### I.    The Experience and Views of Counsel

Experienced counsel, negotiating at arm's-length, have weighed the factors discussed herein and endorse the Settlement. As the Ninth Circuit observed in *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. Moreover, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *California v. eBay, Inc.*, No. 12-cv-05874-EJD, 2015 WL 5168666, at *5 (N.D. Cal. Sept. 3, 2015).

Lead Counsel has extensive experience prosecuting complex securities class actions. *See* Declaration of David Kessler ("Kessler Decl.") attached as Exhibit 4 to the Joost Declaration, at Ex. D (attaching firm biography). Lead Counsel is intimately familiar with the facts and legal issues involved in the Action and firmly believes that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Likewise, defendants were represented by highly experienced and skilled counsel who vigorously defended their clients. Furthermore, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1174.

**J.      The Presence of a Governmental Participant**

The allegations in this Action stem from the SEC's investigations into stock promotion and biopharma companies, as well as the documentary evidence that the SEC obtained from Lion, Singh, Lavos, and Lidingo, among others. As a result of the SEC's investigation, Lion, Singh, and Lavos were forced to pay over $3 million in disgorgement, penalties, and interest in addition to other sanctions. The amounts paid to the SEC, however, are penalties paid to the government and will not be distributed to members of the Settlement Class. Therefore, the Settlement Amount will be the *only* recovery for Settlement Class Members in connection with the conduct alleged in the Action.

In addition, courts have found this factor to weigh in favor of final approval where no state or federal officials have objected after receiving notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.") Pursuant to the Stipulation, in October 2018, Defendants provided notice in accordance with CAFA (Joost Decl., ¶ 46 n.13) and, to date, there have been no objections from any state or federal officials.

**K.      The Reaction of the Settlement Class to the Settlement to Date**

The final *Churchill* factor, the reaction of class members to a proposed settlement, is a significant factor for courts to consider when assessing a proposed settlement. *See Zynga*, 2016 WL 537946, at *13 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). As of February 21, 2019, over 21,200 copies of the Notice and Claim Form have been disseminated to potential Settlement Class Members and nominees. *See Cormio Decl.*, ¶ 12 & Ex. A. In addition, the Summary Notice was published and information regarding the Settlement is available on the website www.LionBiotechnologiesLitigationSettlement.com. Cormio Decl, ¶ 16.

Pursuant to the Preliminary Approval Order, and as set forth in the Notice, the deadline for Settlement Class Members to object to any aspect of the Settlement, or to request exclusion from the Settlement Class, is March 15, 2019. Cormio Decl., ¶ 18, Ex. A ¶¶ 7, 47, 54, 57-58. To date, there

have been no objections (Joost Decl., ¶¶ 9, 48, 54) and no requests for exclusion from the Settlement

Class. *Id.* ¶ 48; Cormio Decl., ¶ 19. The Settlement also has the full support of Lead Plaintiff. *See*

Rabkin Decl., ¶¶ 7-12. *See also DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation

(Third) § 30.44 (1995)) (noting representatives' views should be "entitled to special weight because

[they] may have a better understanding of the case than most members of the class").

Any objections and requests for exclusion received after this submission will be addressed in

Lead Plaintiff's reply papers to be filed with the Court on March 29, 2019. The reply papers will also

include information about the claims submitted.

**L.     The Other Factors Set Forth in Rule 23(e)(2) Support Final Approval of the Settlement**

Rule 23(e)(2), as amended, also considers (i) the effectiveness of the proposed method of

distributing relief to the class, including the method of processing class-member claims; (ii) the terms

of any proposed award of attorney's fees, including timing of payment; (iii) any agreement made in

connection with the proposed settlement; and (iv) the equitable treatment of class members. *See*

Rule 23(e)(2)(C)(ii), (iii), and (iv); Rule 23(e)(2)(D). Each of these additional considerations also

supports final approval of the Settlement.

**1.     The Proposed Method of Processing Claims and Distributing Settlement Proceeds Is Effective**

The proceeds of the Settlement will be distributed to Settlement Class Members who submit

eligible Claim Forms with the required supporting documentation to the Court-authorized Claims

Administrator, JND. JND will review and process all claims received, provide claimants with an

opportunity to cure any deficiency in their claim or request judicial review of the denial of their claim,

and will ultimately mail or wire claimants their *pro rata* share of the Net Settlement Fund as

calculated under the Plan of Allocation. This type of claims processing and method for distributing

settlement proceeds is standard in securities class actions and is routinely found to be effective. *See,*

*e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 6902856, at *2, *7

(N.D. Cal. Nov. 21, 2016) (granting approval to settlement and plan of allocation where "[c]lass

members who submit timely claims will receive payments on a pro rata basis based on the date(s)

class members purchased and sold [Company] shares as well as the total number and amount of claims filed."); *Amgen Inc.*, 2016 WL 10571773, at *7 (granting approval to settlement and plan of allocation where "each class member [will] receive a pro rata share of the net settlement amount based on the Settlement Administrator's calculation of the claimant's recognized losses").

### 2. The Requested Attorneys' Fees and Expenses Are Fair and Reasonable

Lead Counsel has filed a Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses concurrently herewith (the "Fee Motion"). As detailed therein, Lead Counsel is requesting an attorneys' fee award of 25% of the Settlement Fund, which is consistent with attorneys' fee percentages approved in complex securities class actions such as this. *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019) ("Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards."); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (recognizing 25% as the benchmark percentage for attorneys' fees in the Ninth Circuit). As detailed in the Fee Motion, Lead Counsel's fee request is supported by the more than 1,800 hours it devoted to this Action, resulting in a total lodestar of $903,764.50. Joost Decl., ¶ 57. Accordingly, the requested fee equates to a *negative* "multiplier" on Lead Counsel's lodestar (i.e., a discount on what counsel would have earned had counsel been compensated by a paying client using counsel's hourly billing rates). *Id.* The Fee Motion also includes a request for reimbursement of $56,398.10 in typical costs and expenses incurred by Lead Counsel in prosecuting the claims against defendants, and $5,000 in reimbursement of costs incurred by Lead Plaintiff related to his representation of the Settlement Class in this Action. *Id.* ¶¶ 3, 55, 71.

Pursuant to the terms of the Stipulation, and as routinely done in securities class actions, attorneys' fees and expenses will be paid upon any such award being granted by the Court and shall be reimbursed to the Settlement Fund if the award is reduced or reversed in any subsequent legal proceedings. *See* Stipulation (ECF No. 121), at ¶ 16.[17]

---

[17] *See, e.g., Banerjee v. Avinger, Inc.*, No. 17-cv-03400-CW, 2018 WL 6040194, at *1 (N.D. Cal. Oct. 24, 2018) ("awards shall be payable immediately after the Court has entered both the Judgment

### 3. The Supplemental Agreement Does Not Affect the Fairness of the Settlement

Rule 23(e)(2)(C)(iv) asks the Court to consider any additional agreements made by the Parties in connection with the Settlement. Here, the only such agreement is the Parties' confidential Supplemental Agreement entered into in connection with the Settlement that sets forth the conditions under which Lion would be able to terminate the Settlement if the number of Settlement Class Members who request exclusion from the Settlement Class reaches a certain threshold. That type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 3879193, at *7 (N.D. Cal. July 18, 2016) (same). Moreover, the existence of the Supplemental Agreement was disclosed in the Stipulation (see ECF No. 121, ¶ 35) and in the Notice (*see* Cormio Decl., Ex. A, p. 14).

### 4. The Settlement Treats Settlement Class Members Equitably

Finally, the proposed Settlement treats members of the Settlement Class equitably relative to one another. All claims will be calculated under the Plan of Allocation in the same manner. There is no preferential treatment for any member of the Settlement Class. Lead Plaintiff will receive a recovery based on the same formula under the Plan of Allocation (other than an amount that may be awarded by the Court for reimbursement of costs directly to his representation of the Settlement Class as permitted by the PSLRA). As discussed below in Section III below, the Net Settlement Fund will be distributed among the Settlement Class Members in accordance with the Plan of Allocation, which provides a fair and equitable method of allocation.

---

and th[e] order awarding fees and expenses, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund (including any interest earned on such amounts) if and when, as a result of any appeal or otherwise, the fee award or expense reimbursement is lowered or the Settlement does not become effective").

1

### III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

2          A plan of allocation under Rule 23 "is governed by the same standards of review applicable

3    to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Nguyen*,

4    2014 WL 1802293, at *5. Courts "recognize that [a]n allocation formula need only have a reasonable,

5    rational basis, particularly if recommended by experienced and competent counsel." *Id.* (alteration in

6    original). Moreover, "[a] plan of allocation that reimburses class members based on the extent of their

7    injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054,

8    at *1 (N.D. Cal. June 18, 1994); *see also Ansell v. Laikin*, No. 10-cv-09292-PA, 2012 WL 13034812,

9    at *9 (C.D. Cal. July 11, 2012) (finding that "Plan of Allocation, which distributes the proceeds of

10    the net settlement fund on a pro rata basis, based on the claimant's recognized claim amounts, is fair

11    and reasonable").

12          Here, the proposed Plan of Allocation ("Plan"), which was developed by Lead Counsel in

13    consultation with Lead Plaintiff's damages expert, is a fair and reasonable method for allocating the

14    Net Settlement Fund among eligible Settlement Class Members. Joost Decl., ¶ 51. The Plan is

15    designed to equitably distribute the Net Settlement Fund to those Settlement Class Members who

16    suffered economic losses as a result of the alleged wrongdoing, as opposed to economic losses caused

17    by market or industry factors or company-specific factors unrelated thereto. *Id.* ¶ 50. The Plan

18    incorporates a thorough analysis of the price movement in Lion common stock over the course of the

19    Class Period, and the changes in the price of Lion common stock in reaction to public disclosures that

20    allegedly corrected the respective alleged misrepresentations and omissions. *Id.*

21          Under the Plan, a Recognized Loss Amount will be calculated for each share of Lion common

22    stock purchased or otherwise acquired during the Class Period (i.e., between September 27, 2013 and

23    April 10, 2017, inclusive) that is listed in a Claimant's Claim Form and for which adequate

24    documentation is provided. The calculation of a Recognized Loss Amount (and ultimately, a

25    Claimant's "Recognized Claim") will depend upon several factors, including the date(s) when the

26    Claimant purchased or acquired his, her or its Lion common stock during the Class Period, and

27    whether such stock was sold and if so, when and at what price. Joost Decl., ¶ 52. Pursuant to the Plan,

28    in order to have a loss, the Lion common stock purchased or acquired during the Class Period must

1   have been held through at least one of the alleged corrective disclosures dates (i.e., May 14, 2014,

2   November 12, 2014, and April 10, 2017). *Id.*; *see also Dura Pharms, Inc.*, 544 U.S. at 342 (investors

3   who bought and sold shares "before the relevant truth begins to leak out" have no recognized losses

4   because "the misrepresentation will not have led to any loss").[18] The Claims Administrator, JND, will

5   determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund by dividing the

6   Authorized Claimant's Recognized Claim (i.e., the sum of a claimant's Recognized Loss Amounts

7   as calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied

8   by the total amount in the Net Settlement Fund. Joost Decl., ¶ 52; *see also* Cormio Decl., Ex. A

9   (Appendix A)). Thereafter, following approval of the Settlement and upon the Court's entry of an

10  Order approving a distribution plan, the Net Settlement Fund will be distributed to Authorized

11  Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See Zynga*, 2016

12  WL 537946, at *12 (approving plan of allocation when the allocation was pro rata across the class).

13          The Plan was fully disclosed in the Notice mailed to potential Settlement Class Members and

14  nominees. To date, there have been no objections to the Plan. Joost Decl., ¶¶ 9, 48, 54. Accordingly,

15  Lead Counsel believes that the Plan is fair, reasonable, and adequate and should be approved.

16  **IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

17          In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff

18  requested that the Court provisionally certify the Settlement Class for settlement purposes so that

19  notice of the proposed Settlement, the final approval hearing, and the rights of Settlement Class

20  Members to request exclusion, object or submit Claim Forms could be issued. In its Preliminary

21  Approval Order, the Court provisionally certified the Settlement Class for settlement purposes. *See*

22  ECF No. 129, ¶¶ 1-3 (analyzing how the Action satisfies each element for class certification). Nothing

23  has changed to alter the propriety of the Court's provisional certification and, for all the reasons stated

24  in Lead Plaintiff's Notice of Motion, Unopposed Motion for Preliminary Approval of Proposed

25  Settlement, and Memorandum of Points and Authorities in Support Thereof (ECF No. 119),

26

27

28  [18]  The calculation of a Claimant's Recognized Claim also takes into account the PSLRA's statutory limitation on recoverable damages. *See* 15 U.S.C. § 78u-4(e).

1    incorporated herein by reference, Lead Plaintiff respectfully requests that the Court finally certify the

2    Settlement Class for purposes of settlement.

3    **V.    THE NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23**

4          The Notice provided to Settlement Class Members satisfied the requirements of both

5    Rule 23(c)(2) and 23(e). Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in

6    a reasonable manner to all class members who would be bound by the proposal[.]" Rule 23(c)(2)(B)

7    further requires certified classes to receive "the best notice that is practicable under the circumstances,

8    including individual notice to all members who can be identified through reasonable effort." In

9    securities actions, the contents of the notice must contain the information outlined in Rule 23(c)(2)(B)

10   and the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). Here, both the content of the Court-approved Notice

11   and the methods of its distribution to Settlement Class Members satisfy the notice requirements.

12         In accordance with the Preliminary Approval Order, JND disseminated the Notice and Claim

13   Form via first-class mail or email, to potential Settlement Class Members at the addresses set forth in

14   the records provided by Lion, as well as any other potential Settlement Class Members identified

15   through further reasonable effort. Cormio Decl., ¶¶ 2-8, 10-12. In addition, JND caused the Summary

16   Notice to be published in *Investor's Business Daily* on January 7, 2019, and transmitted over

17   *PRNewswire* on January 9, 2019. *Id.* ¶ 13. The Notice and Claim Form, as well as the Stipulation,

18   Preliminary Approval Order, and other relevant documents, were also posted, for review and easy

19   downloading, on the Settlement website established and currently maintained by JND,

20   www.LionBiotechnologiesLitigationSettlement.com. *Id.* ¶ 16. Defendants also mailed notice of the

21   Settlement pursuant to CAFA. Joost Decl., ¶ 46 n.13.

22         The Notice informs Settlement Class Members of, among other things: (1) the amount of the

23   Settlement; (2) the reasons why the Parties are proposing the Settlement; (3) the estimated average

24   recovery per affected share of Lion common stock; (4) the maximum amount of attorneys' fees and

25   expenses that will be sought;[19] (5) the identity and contact information for representatives of Lead

26

27   ───────────────────
     [19]  The Ninth Circuit has also ruled that the objection deadline should fall after motions in support of
     approval of attorneys' fees and expenses have been filed. *See, e.g.*, *In re Mercury Interactive Corp.*

28   *Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (requiring that fee motion be made available to the class

1    Counsel available to answer questions concerning matters contained in the Settlement; (6) the right

2    of Settlement Class Members to object to the Settlement; (7) the right of Settlement Class Members

3    to seek to be excluded from the Settlement Class; (8) the binding effect of a judgment on Settlement

4    Class Members; (9) the dates and deadlines for certain Settlement-related events; and (10) how to

5    obtain additional information about the Action and Settlement by contacting Lead Counsel, the

6    Claims Administrator, or by assessing this information on the Settlement website, the Court's PACER

7    system or by visiting the office of the Clerk. *See* Fed. R. Civ. P. 23(c)(2)(B), 15 U.S.C. § 78u-4(a)(7);

8    *see also* N.D. Cal. Procedural Guidance for Class Action Settlements. The Notice also contains the

9    Plan of Allocation and provides Settlement Class Members with information on how to submit a

10   Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund. *See* Cormio

11   Decl., Ex. A. Thus, the Notice is sufficient because it "generally describes the terms of the settlement

12   in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

13   heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *see also Spann v. J.C. Penney*

14   *Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective

15   members of the class of the terms of the proposed settlement and of the options that are open to them

16   in connection with the proceedings."). Here the Notice provides the necessary information for

17   Settlement Class Members to make an informed decision regarding the Settlement.

18         In sum, the Notice fairly apprises Settlement Class Members of their rights with respect to the

19   Settlement, is the best notice practicable under the circumstances, and complies with the Court's

20   Preliminary Approval Order, Rule 23, the PSLRA, due process, and N.D. Cal. Procedural Guidance

21   for Class Action Settlements. Comparable notice programs are routinely approved by courts in this

22   Circuit. *See, e.g.*, *Wells Fargo*, 2019 WL 330910, *3 (approving similar notice program); *Hayes*,

23   2016 WL 6902856, at *4-5 (same); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1170-71

24   (same).

25

26

27   ─────────────────────
     before the deadline for objecting to the fee). This is the case here. The papers filed with the Court by
28   Lead Counsel today, including the fee motion, will be posted and made available for review on the
     Settlement website.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MPA
CASE NO. 3:17-CV-02086-SI                                                                    22

1

## VI.     CONCLUSION

2

For the reasons stated herein and in the Joost Declaration, Lead Plaintiff respectfully requests

3

that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

4

Respectfully submitted,

5

Dated: February 21, 2019

6

**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**

7

_/s/ Jennifer L. Joost_
Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850

8

San Francisco, CA 94104
Telephone: (415) 400-3000

9

Facsimile: (415) 400-3001
jjoost@ktmc.com

10

-and-

11

Geoffrey C. Jarvis (*Pro Hac Vice*)
280 King of Prussia Road

12

Radnor, PA 19087
Telephone: (610) 667-7706

13

Facsimile: (610) 667-7056
gjarvis@ktmc.com

14

15

*Lead Counsel for Lead Plaintiff and*
*the Settlement Class*

16

17

18

19

20

21

22

23

24

25

26

27

28