1  KESSLER TOPAZ MELTZER
      & CHECK, LLP
2  Geoffrey C. Jarvis (*Pro Hac Vice*)
   280 King of Prussia Road
3  Radnor, PA 19087
   Telephone: (610) 667-7706
4  Facsimile: (610) 667-7056
   gjarvis@ktmc.com
5
   -and-
6
   Jennifer L. Joost (Bar No. 296164)
7  One Sansome Street, Suite 1850
   San Francisco, CA 94104
8  Telephone: (415) 400-3000
   Facsimile: (415) 400-3001
9  jjoost@ktmc.com

10 *Lead Counsel for Lead Plaintiff and
   the Settlement Class*

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

| | |
|---|---|
| 15  JAY RABKIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:17-cv-02086-SI |
| 16 | <u>CLASS ACTION</u> |
| 17                          Plaintiff, | LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND |
| 18  v. | REIMBURSEMENT OF LITIGATION EXPENSES AND MEMORANDUM OF |
| 19  LION BIOTECHNOLOGIES, INC., MANISH SINGH, MICHAEL HANDELMAN, | POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| 20  and KAMILLA BJORLIN, | |
| 21                          Defendants. | Hon. Susan Illston |
| 22 | Date:        April 12, 2019 |
| 23 | Time:        10:00 a.m.  Courtroom:   1-17th Floor (San Francisco) |

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 12, 2019 at 10:00 a.m., in Courtroom 1 on the 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Susan Illston presiding, Court-appointed Lead Counsel, Kessler Topaz Meltzer & Check, LLP, will and hereby does move, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an Order granting an award of attorneys' fees and reimbursement of litigation expenses in the above-captioned action.

This motion is made pursuant to the Court's November 30, 2018 Order Preliminarily Approving Proposed Settlement and Providing for Notice (ECF No. 129) ("Preliminary Approval Order") and is based on (i) this Notice of Motion and Motion and the Memorandum of Points and Authorities that follow; (ii) the accompanying Declaration of Jennifer L. Joost in Support of (I) Lead Plaintiff's Motion for Final Approval of Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joost Declaration" or "Joost Decl."), and the exhibits thereto;[1] (iii) the Stipulation of Settlement and Release dated as of September 28, 2018, filed previously with the Court (ECF No. 121) ("Stipulation"); (iv) the pleadings and records on file in this Action; and (v) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objection to the request for attorneys' fees and expenses must be filed on or before March 15, 2019. To date, no objections have been received. A proposed order will be submitted with Lead Counsel's reply papers on March 29, 2019, after the deadline to object has passed.

---

[1]  All exhibits referenced herein are attached to the Joost Declaration.

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF ISSUES TO BE DECIDED ................................................................................ vii

I.      INTRODUCTION ..................................................................................................................... 1

II.     LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES FROM THE SETTLEMENT
        FUND IS REASONABLE AND SHOULD BE APPROVED ................................................. 4

        A.      Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund ........... 4

        B.      The Court Should Calculate Fees as a Percentage of the Common Fund .................... 4

        C.      A Fee of 25% of the Settlement Fund Is Reasonable under Either the Percentage-of-
                Recovery or Lodestar Method ..................................................................................... 5

                1.      The Fee Request Is Reasonable under the Percentage Method ...................... 6

                2.      The Fee Request Is Reasonable under the Lodestar Method and a Cross-
                        Check Further Underscore the Reasonableness of the Fee Request .............. 8

        D.      The Factors Considered by Courts in the Ninth Circuit Support Approval of the
                Requested Fee ............................................................................................................. 10

                1.      The Results Achieved .................................................................................. 11

                2.      The Risks of Litigation ................................................................................ 12

                3.      The Skill Required and the Quality of Work ............................................... 15

                4.      The Contingent Nature of the Fee and Financial Burden Carried by the
                        Plaintiffs ...................................................................................................... 16

                5.      Awards Made in Similar Cases .................................................................... 17

                6.      The Reaction of the Settlement Class to Date ............................................. 17

III.    LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED ........................................................................................................................... 18

IV.     LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS UNDER 15
        U.S.C. § 78u-4(A)(4) ............................................................................................................ 19

V.      CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American Apparel, Inc. Shareholder Litig.*,
  No. 10-cv-06352-MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................7

*In re Amgen Inc. Sec. Litig.*,
  No. 07-cv-2536-PSG, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................................8, 9

*In re Apple Comput. Sec. Litig.*,
  No. 84-cv-20148-JW,1991 WL 238298 (N.D. Cal. Sept. 6, 1991)............................................17

*Banerjee v. Avinger, Inc.*,
  No. 17-cv-3400-CW, 2018 WL 6040194 (N.D. Cal. Oct. 24, 2018)............................................9

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)............................................................................17

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013)..............................................................................................15

*Bayat v. Bank of the West*,
  No. 13-cv-02376-EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ......................................6

*In re Biolase, Inc. Sec. Litig.*,
  13-cv-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ..............................................11

*In re BioScrip, Inc. Secs. Litig.*,
  273 F. Supp. 3d 474 (S.D.N.Y. 2017) ........................................................................................7

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...................................................................................................................5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................................................4

*Booth v. Strategic Realty Tr., Inc.*,
  No. 13-cv-04921-JST, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) .........................................6

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988)....................................................................................................4

*Browne v. Am. Honda Motor Co.*,
  2010 WL 9499073 (C.D. Cal. Oct. 5, 2010) .............................................................................17

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991).....................................................................................................5

*In re Cardinal Health, Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007)....................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ......................................................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .........................................................................3, 14

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ............................................................................5

*City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*,
   No. 07-cv-05111-CW, slip op. (N.D. Cal. Apr. 8, 2010) ....................................7

*In re Comverse Tech., Inc. Secs. Litig.*,
   No. 06-cv-01825-NGG, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............9

*Dartell v. Tibet Pharmaceuticals, Inc.*,
   No. 14-cv-03620, 2017 WL 2815073 (D.N.J. June 29, 2017) ............................7

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)..............6, 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. 02-md-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ...............16

*Ellison v. Steven Madden, Ltd.*,
   No. 11-cv-05935-PSG, 2013 WL 12124432 (C.D. Cal. May 7, 2013)..................4

*Fischel v. Equitable Life Assurance Soc'y of the United States*,
   307 F.3d 997 (9th Cir. 2002) ...........................................................................6

*In re Giant Interactive Grp., Inc. Secs. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011)......................................................................12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..............................................................................4

*In re Groupon, Inc. Secs. Litig.*,
   No. 12-cv-02450, 2016 WL 3896839 (N.D. Ill. July 13, 2016)..........................7

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2015 WL 2438274 (N.D. Cal. May 21, 2015) ...................................................10

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ...........................................................................4

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................................11

*In re Heritage Bond Litig.*,
   No. 02-ml-1475-DT, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ...........................................15

*Hopkins v. Stryker Sales Corp.*,
   No. 11-cv-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013)........................................2, 9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012)................................................................................................14

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 09-cv-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) .........................................7

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................................................................6, 7, 19

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................................9

*Janus Capital Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ................................................................................................................13

*In re JDS Uniphase Secs. Litig.*,
   No. 02-cv-01486-CW (N.D. Cal. Nov. 27, 2007) .....................................................................17

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996).......................................................................................................4

*Knight v. Red Door Salons, Inc.*,
   No. 08-cv-01520-SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................17, 19

*In re Leapfrog Enters., Inc. Secs. Litig.*,
   Master File No. 3:15-cv-00347-EMC, slip op. (N.D. Cal. Oct. 26, 2018)...................................6

*In re Magsafe Apple Power Adapter Litig.*,
   No. 91-cv-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015).........................................18

*McPhail v. Command Fin. Planning, Inc.*,
   No. 05-cv-00179-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................11, 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)....................................................................................................19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..................................................................................................................8

*Mulligan v. Impax Labs, Inc.*,
   No. 13-cv-01037-EMC, slip op. (N.D. Cal. July 23, 2015) ........................................................6

*Nguyen v. Radient Pharm. Corp.*,
   No. 11-cv-00406-DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014).......................................14

*Nobles v. MBNA Corp.*,
 No. 06-cv-03723-CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)......................................13

*In re Anthem, Inc. Data Breach Litig.*,
 No. 15-md-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)......................................6

*In re Nuvelo, Inc. Secs. Litig.*,
 No. 07-cv-04056-CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ..................................7, 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
 597 F.3d 501 (2d Cir. 2010) ......................................................................................................17

*In re OmniVision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007)................................................................................ *passim*

*In re Oracle Corp. Sec. Litig.*,
 2009 WL 1709050 (N.D. Cal. June 19, 2009) *aff'd*, 627 F.3d 376 (9th Cir. 2010)....................17

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ..........................................................................................................3

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989) ........................................................................................................6

*In re Portal Software, Inc. Sec. Litig.*,
 No. 03-cv-05138-VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...............................10, 13

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993) ............................................................................................................4

*Rieckborn v. Velti PLC*,
 No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)..........................................6

*Rihn v. Acadia Pharma, Inc.*,
 No. 15-cv-00575-BTM, 2018 WL 513448 (S.D. Cal. Jan. 22, 2018)..........................................6

*Robbins v. Koger Props. Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ..................................................................................................17

*Schuler v. Medicines Co.*,
 No. 14-cv-01149-CCC, 2016 WL 3457218 (D.N.J. June 24, 2016)...........................................12

*In re Spectranetics Corp. Secs. Litig.*,
 No. 08-cv-02048-REB, 2011 WL 13238696 (D. Colo. Apr. 4, 2011)..........................................7

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) .......................................................................................................5

*Tait v. BSH Home Appliances Corp.*,
 No. 10-cv-00711-DOC, 2015 WL 4537463 (C.D. Cal. July 27, 2015) ........................................5

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295, 305 (1st Cir. 1995) ................................................................4

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-cv-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018).........................6

*Thorpe v. Walter Investment Management Corp.*,
  No. 14-cv-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016).........................7

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................6

*Vaccaro v. New Source Energy Partners L.P*,
  No. 15-cv-08954, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................................7

*In re Veeco Instruments Sec. Litig.*,
  No. 05-md-01695-CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .........................16

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977).........................................................4, 19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................ *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...........................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994).........................................................4, 8, 16

*Weeks v. Kellogg Co.*,
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2011) ...........................................5

*White v. Experian Info. Sols., Inc.*,
  No. 05-cv-01070-DOC, 2018 WL 1989514 (C.D. Cal. Apr. 6, 2018)........................8

*Wolf v. Permanente Med. Grp., Inc.*,
  No. 17-cv-05345-VC, 2018 WL 5619801 (N.D. Cal. Sept. 14, 2018) ........................6

*In re World Trade Ctr. Disaster Site Litig.*,
  754 F.3d 114 (2d Cir. 2014) ................................................................4

**Statutes**

15 U.S.C. § 78u-4 ................................................................5, 19

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve Lead Counsel's request for an award of attorneys' fees.

2.      Whether the Court should approve Lead Counsel's request for reimbursement of litigation expenses.

3.      Whether the Court should approve Lead Plaintiff's request for reimbursement of reasonable costs related to his representation of the Settlement Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz" or "Lead Counsel"), respectfully submits this memorandum of points and authorities in support of its request for an award of attorneys' fees in the amount of 25% of the Settlement Fund.[2] Lead Counsel also seeks reimbursement of $61,398.10 in Litigation Expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, which amount *includes* a proposed award pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs incurred by Lead Plaintiff directly related to his representation of the Settlement Class in the total amount of $5,000.

## I.    INTRODUCTION

Lead Plaintiff, as a result of his efforts and through the work of Lead Counsel, has achieved a $3,250,000 Settlement of the Action for the benefit of the Settlement Class. The proposed Settlement is an excellent result for the Settlement Class—representing a sizeable percentage, *approximately 27%*, of the maximum damages that the Settlement Class would be able to recover at trial, notwithstanding the significant risks Lead Plaintiff faced in prevailing, including overcoming defendants' challenges to liability, loss causation, and damages.[3] The Settlement provides a substantial and certain recovery to Settlement Class Members, and eliminates the significant litigation risks, as well as the delays and expense that would result from years of continued litigation through the completion of discovery, class certification briefing, summary judgment motions, trial, and appeals. The informed decision of Lead Plaintiff and Lead Counsel to resolve this Action now also ensures the availability of sufficient insurance proceeds to fund a meaningful settlement. On December 14, 2018, the Settlement Amount was deposited into an escrow account and is currently earning interest for the benefit of the Settlement Class.[4]

Lead Counsel has not received any compensation for its efforts on behalf of the Settlement Class. In prosecuting and ultimately resolving the Action, Lead Counsel dedicated time and resources with no

---

[2]  All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation or in the accompanying Joost Declaration.

[3]  As discussed in the Joost Declaration, Lead Plaintiff's damages expert estimated the Settlement Class's maximum damages to be $12 million based on an event study and a reasonable estimation of the number of damaged shares. Joost Decl., ¶ 6, n.6.

[4]  *See* Joost Decl., ¶ 5.

guarantee of recovery. As detailed in the Joost Declaration,[5] Lead Counsel's efforts included (i) conducting a comprehensive investigation into defendants' alleged misconduct, including reviewing the voluminous public record that included SEC filings, press releases and public statements, analyst, media, and news reports about Lion, investigatory reports, documentary materials obtained from the SEC's investigation into Lion, Lidingo Holdings LLC, Lavos LLC, and ImmunoCellular Therapeutics, Ltd., as well as the SEC's findings based upon its investigation, and Lion's publicly-available trading data; (ii) researching and drafting the detailed Amended Complaint; (iii) successfully opposing (in large part) defendants' three motions to dismiss; (iv) serving document requests and engaging in meet and confers regarding the scope of the discovery requested and defendants' objections thereto; (v) reviewing more than 12,000 pages of documents Lion previously produced in connection with the SEC's investigation; (vi) consulting with a damages expert; and (vii) preparing for and participating in arm's-length settlement negotiations with Defendants' Counsel, including formal mediation, to resolve the Action. Joost Decl., ¶ 65.

Lead Counsel has expended over 1,800 hours with a resulting lodestar of $903,764.50, in the investigation, prosecution, and resolution of the Action.[6] Here, unlike most cases in which counsel seek a fee which exceeds their lodestar, *see, e.g.*, *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786-LHK, 2013 WL 496358, *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."),[7] Lead Counsel's fee request is *less than* the total lodestar value of the time that Lead Counsel dedicated to the Action. For its efforts, Lead Counsel respectfully requests a fee award of

---

[5]  The Joost Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history of the Action (¶¶ 14-28); the nature of the claims asserted (¶¶ 11-13); the negotiations leading to the Settlement and the Stipulation (¶¶ 29-35); the risks of continued litigation (¶¶ 36-43); and Lead Counsel's efforts on behalf of the Settlement Class (¶¶ 14-35).

[6]  For purposes of this fee application, Lead Counsel has only included time through the entry of the Court's Preliminary Approval Order on November 30, 2018. Lead Counsel has spent an additional 90+ hours in connection with this Action since that date and will continue to devote resources to the Action through the completion of the Settlement's administration and distribution of the Net Settlement Fund to the Settlement Class.

[7]  Unless otherwise indicated, internal citations and footnotes have been omitted and emphasis has been added.

25% of the Settlement Fund—the "benchmark" for percentage attorneys' fee awards in the Ninth Circuit.[8] It is worth noting that this fee request, equating to roughly 90% of the value of the time Lead Counsel devoted to this case, is made pursuant to a retention agreement with Lead Plaintiff that permits Lead Counsel to seek more.[9]

Pursuant to the Court's Preliminary Approval Order, more than 21,200 copies of the Notice have been disseminated to potential Settlement Class Members and nominees as of February 21, 2019, and the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PRNewswire*. *See* Declaration of Robert Cormio ("Cormio Decl.") attached as Exhibit 3 to the Joost Declaration, ¶¶ 12-13. The Notice advises recipients that Lead Counsel would be applying to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and reimbursement of Litigation Expenses in an amount not to exceed $85,000. Cormio Decl., Ex. A ¶¶ 5, 46. The fees and expenses sought by Lead Counsel do not exceed these amounts. The Notice further informs Settlement Class Members that they can object to the requests for attorneys' fees and expenses until March 15, 2019. *Id.*, Ex. A ¶¶ 7, 54, 57. While the deadline to object has not yet passed, to date, no objections to the amounts of attorneys' fees and expenses set forth in the Notice have been received. Joost Decl., ¶ 48.

Lead Counsel also respectfully submits that the expenses for which it seeks reimbursement were reasonable and necessary for the successful prosecution and resolution of the Action—and that the request for an award to Lead Plaintiff for the time he dedicated to the Action on behalf of the Settlement Class is likewise reasonable and appropriate.

For the reasons set forth herein, Lead Counsel respectfully submits that its motion for attorneys' fees and expenses should be granted in full.

---

[8]  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.").

[9]  A fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation should either be considered presumptively reasonable or, at very least, given considerable weight by the Court. *See In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 759 (S.D. Ohio 2007) (strongly endorsing presumption of reasonableness for *ex-ante* fee agreements); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex-ante* fee agreements in securities class actions should be given "a presumption of reasonableness").

## II.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES FROM THE SETTLEMENT FUND IS REASONABLE AND SHOULD BE APPROVED

### A.   Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). The 25% fee requested here is the benchmark fee award established by the Ninth Circuit and will fairly compensate counsel for the risks undertaken in this Action. The lodestar cross-check confirms the fairness of this fee, as the resulting negative "multiplier" is well-within the parameters for this Circuit and District.

### B.   The Court Should Calculate Fees as a Percentage of the Common Fund

Where a settlement produces a common fund, courts in the Ninth Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method in awarding attorney's fees. *See WPPSS*, 19 F. 3d at 1296; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, the percentage-of-recovery method has become the prevailing method used in this Circuit. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. 11-cv-05935-PSG, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (same).[10]

---

[10]   Other circuits have similarly endorsed the percentage-of-recovery method. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of

The rationale for compensating counsel in common fund cases on a percentage basis is sound. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of the percentage method). *First*, this method closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery.[11] *Second*, it decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis, and Court's employing the percentage-of-recovery method often utilize a less rigorous lodestar "cross-check" on the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1050 (affirming use of percentage method in calculating fees and application of lodestar method as a cross-check); *see also Weeks v. Kellogg Co.*, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2011) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). In addition, the percentage-of-recovery method is particularly appropriate in PSLRA cases. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable").

### C.   A Fee of 25% of the Settlement Fund Is Reasonable under Either the Percentage-of-Recovery or Lodestar Method

In this case, whether assessed under the percentage-of-recovery or lodestar method, the 25% fee request—which represents a negative lodestar multiplier of approximately 0.90—is fair and reasonable.

---

Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Moreover, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class . . ."

[11] *See Tait v. BSH Home Appliances Corp.*, No. 10-cv-00711-DOC, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015) (noting benefits of percentage approach include "consistency with contingency fee calculations in the private market" and "aligning the lawyers' interests with achieving the highest award for the class . . .").

1. **The Fee Request Is Reasonable under the Percentage Method**

As mentioned above, the Ninth Circuit has established 25% as the "benchmark" for percentage fee awards in common-fund cases, such as this one. *See, e.g.*, *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1006 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047-48; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). While the 25% benchmark can "be adjusted upward or downward to account for any unusual circumstances," *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), courts have found fee awards in this amount to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018); *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015). Indeed, "in many securities class actions, the [fee] award has exceeded the 25 percent benchmark." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("a proposed fee of 25% is consistent, if not below, the average award in similar complex actions").

Ample precedent exists in this Circuit for granting fees to plaintiff's counsel that are equal to or greater than Lead Counsel's 25% fee request in securities class actions and other complex litigation with comparable recoveries. *See, e.g.*, *In re Leapfrog Enters., Inc. Secs. Litig.*, Master File No. 3:15-cv-00347-EMC, slip op. at 1 (N.D. Cal. Oct. 26, 2018) (awarding 25% of $5.5 million settlement fund, resulting in negative multiplier); *Wolf v. Permanente Med. Grp., Inc.*, No. 17-cv-05345-VC, 2018 WL 5619801, at *2 (N.D. Cal. Sept. 14, 2018) (awarding 25% of $2.95 million settlement fund, resulting in 2.75-3.0 multiplier); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2018 WL 2234598, at *1, *3 (N.D. Cal. May 15, 2018) (awarding 25% of $6.2 million settlement fund, resulting in negative multiplier); *Rihn v. Acadia Pharma, Inc.*, No. 15-cv-00575-BTM, 2018 WL 513448, at *5-6 (S.D. Cal. Jan. 22, 2018) (awarding 25% of $2.925 million settlement fund, resulting in 1.03 multiplier); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) (awarding fees of 25% of $9.5 million partial settlement fund, resulting in 1.25 multiplier); *Mulligan v. Impax Labs, Inc.*, No. 13-cv-01037-EMC, slip op. at 7 (N.D. Cal. July 23, 2015) (awarding 29% of $8 million settlement fund, resulting in 1.08 multiplier); *Bayat v. Bank of the West*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *1, *10 (N.D. Cal. Apr. 15, 2015) (awarding 25% of approximately $3.354 million settlement fund, resulting in 1.5 multiplier);

*In re American Apparel, Inc. Shareholder Litig.*, No. 10-cv-06352-MMM, 2014 WL 10212865, at *11, *23 (C.D. Cal. July 28, 2014) (awarding 25% of $4.8 million settlement fund, resulting in negative multiplier); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09-cv-00419-MMD, 2012 WL 5199742, at *2, *4 (D. Nev. Oct. 19, 2012) (awarding 25% of $12.5 million settlement fund, resulting in 2.02 multiplier); *In re Nuvelo, Inc. Secs. Litig.*, No. 07-cv-04056-CRB, 2011 WL 2650592, at *1, *3 (N.D. Cal. July 6, 2011) (awarding 30% of approximately $8.9 million settlement fund (net of expenses), resulting in negative multiplier); *City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*, No. 07-cv-05111-CW, slip op. at 1 (N.D. Cal. Apr. 8, 2010) (awarding fees of 25% of $5 million settlement fund, resulting in 1.23 multiplier); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1175-76 (awarding 25% of $10 million settlement fund, resulting in 1.47 multiplier).[12]

The reasonableness of the 25% fee request is also supported by an analysis of the median fee percentage awarded in securities class actions since the enactment of the PSLRA conducted by NERA Economic Consulting, finding that in securities class action settlements of less than $5 million, the median fee award was 30% for years 2012 to 2017. *See* S. Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full Year Review*, NERA (Jan. 28, 2018), http://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf attached as Exhibit 5 to the Joost Declaration.

---

[12] A 25% fee is also within the range of awards typically awarded in securities class action settlements in other Circuits. *See., e.g.*, *Vaccaro v. New Source Energy Partners L.P*, No. 15-cv-08954, 2017 WL 6398636, at *7-8 (S.D.N.Y. Dec. 14, 2017) (awarding 33.33% of $2.85 million settlement fund, resulting in 1.24 multiplier); *In re BioScrip, Inc. Secs. Litig.*, 273 F. Supp. 3d 474, 496-97, 502 (S.D.N.Y. 2017) (awarding 25% of $10.9 million settlement fund, resulting in 1.39 multiplier); *Dartell v. Tibet Pharmaceuticals, Inc.*, No. 14-cv-03620, 2017 WL 2815073, at *9-11 (D.N.J. June 29, 2017) (awarding 33 1/3% of $2.075 million settlement fund, resulting in negative multiplier); *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880-UU, 2016 WL 10518902, at *10-11 (S.D. Fla. Oct. 17, 2016) (awarding 33.3% of $24 million settlement fund, resulting in 3.58 multiplier); *In re Groupon, Inc. Secs. Litig.*, No. 12-cv-02450, 2016 WL 3896839, at *3-4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement fund); *In re Spectranetics Corp. Secs. Litig.*, No. 08-cv-02048-REB, 2011 WL 13238696, at *3 (D. Colo. Apr. 4, 2011) (awarding 28% of $8.5 million settlement fund, resulting in 1.09 multiplier).

### 2. The Fee Request Is Reasonable under the Lodestar Method and a Cross-Check Further Underscore the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-recovery method, courts in the Ninth Circuit typically cross-check the proposed award against counsel's lodestar, although such a cross-check is not required. *See In re Amgen Inc. Sec. Litig.*, No. 07-cv-2536-PSG, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."). The work undertaken by Lead Counsel wholly supports the Court's approval of Lead Counsel's 25% fee request. Through November 30, 2018, Lead Counsel devoted over 1,800 hours to this Action. Joost Decl., ¶¶ 57, 68; *see also* Declaration of David Kessler ("Kessler Declaration" or "Kessler Decl.") attached as Exhibit 4 to the Joost Declaration, at Exs. 1 and 2.[13] The accompanying Kessler Declaration provides a breakdown of this time by category (i.e., Lead Plaintiff Motion; Factual Investigation/Complaint; Motion to Dismiss; Discovery; Mediation/Settlement; Litigation Strategy/Analysis; and Case Management, Status Hearing & Scheduling).[14] Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional support staff employee by their 2018 hourly rates, is $903,764.50. *See id.*[15] Accordingly, the 25% fee request

---

[13] Lead Counsel's lodestar figure does not include any time expended since November 30, 2018 (i.e., over 90 hours), or the time of any attorney or professional support staff employee at Kessler Topaz that billed less than 10 hours to the Action. Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the Settlement. Additional resources will be expended assisting Settlement Class Members with their Claim Forms and related inquires and working with the Claims Administrator, JND, to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. Joost Decl., ¶ 68 n.21.

[14] Specifically, Lead Counsel's time breaks down as follows: (i) 194.85 hours on Lead Plaintiff Motion; (ii) 626.70 hours on Factual Investigation/Complaint; (iii) 346.10 hours on Motion to Dismiss; (iv) 116.95 hours on Discovery; (v) 352.35 hours on Mediation/Settlement; (vi) 32.50 hours on Litigation Strategy/Analysis; and (vii) 133.28 hours on Case Management, Status Hearing & Scheduling.

[15] It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274 (1989) at 284; *WPPSS*, 19 F.3d at 1305; *White v. Experian Info. Sols., Inc.*, No. 05-cv-01070-DOC, 2018 WL 1989514, at *15 (C.D. Cal. Apr. 6, 2018) ("Courts in this Circuit regularly apply current billing rates in evaluating fee requests in multi-year litigation to account for the delay in payment."). Nevertheless, because the Settlement was reached and preliminarily approved in late 2018, Lead Counsel utilized its 2018 rates rather than current 2019 rates to calculate its lodestar.

(i.e., $812,500 (before interest)), represents a *negative* "multiplier" of approximately 0.90, or in other words, 90% of the lodestar value of the time that Lead Counsel dedicated to the Action.  Joost Decl., ¶ 68.

This "negative" or fractional multiplier is well below the range of multipliers commonly awarded in comparable litigation. Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging from one to four times the lodestar or even higher. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding that lodestar multipliers ranging from 1 to 4 are common); *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786-LHK, 2013 WL 496358, *4 (N.D. Cal. Feb. 6, 2013) (same); *see also Destefano*, 2016 WL 537946, at *21 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4."). Likewise, a review of the lodestar multipliers in the cases cited above in Section II(C)(1), all of which involved percentage awards of 25% or higher, reveals that most fee awards result in a positive multiplier. Indeed, in cases of this nature, fees representing multiples well above counsel's lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and affirming a fee representing a 3.65 multiplier); *In re Comverse Tech., Inc. Secs. Litig.*, No. 06-cv-01825-NGG, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Here, despite the existence of numerous substantial litigation risks from the outset and other relevant factors, Lead Counsel is seeking a fee that is less than the lodestar value of its time. As mentioned above, Lead Counsel makes this request pursuant to a retention agreement with Lead Plaintiff that permits Lead Counsel to seek more. Joost Decl., ¶ 57. Courts have repeatedly recognized that a percentage fee request that is less than counsel's lodestar provides strong confirmation for the reasonableness of the award. *See, e.g.*, *Banerjee v. Avinger, Inc.*, No. 17-cv-3400-CW, 2018 WL 6040194, at *3 (N.D. Cal. Oct. 24, 2018) (finding 30% fee award to be appropriate where "the awarded fee [was] less than the lodestar, because of the positive results that counsel achieved, and because of the legal and financial risks involved"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 ("Courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (finding "no real danger of over-compensation" given

that the requested fee represented a discount to counsel's lodestar); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-05138-VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("negative multiplier . . . suggest[s] that the requested percentage based fee is fair and reasonable").

The accompanying Kessler Declaration sets forth the hourly rates utilized by Lead Counsel in calculating its lodestar. These rates range from (i) $725 to $850 for partners; (ii) $675 for counsel; (iii) $450 to $550 for associates; (iv) $250 to $275 for paralegals; and (v) $275 to $300 for in-house investigators. *See* Kessler Decl., Ex. A. Lead Counsel believes these rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check in which the court found that: "The blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals."); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys in 2015 of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals).[16]

In sum, Lead Counsel's requested fee award is reasonable, justified, and well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or as a cross-check on counsel's lodestar. As discussed below, each of the factors considered by courts in the Ninth Circuit also strongly supports a finding that the requested fee is reasonable.

### D.     The Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee

Courts in this Circuit also consider the following additional factors when determining whether a fee is fair and reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of

---

[16]  Lead Counsel's hourly rates also compare favorably with rates charged by Sidley Austin LLP, Lion's defense counsel in this Action, which, in a 2017 bankruptcy filing, reported a blended rate of $651.96 per hour. *See In re AshInc Corp, et al.*, No. 12-11564 (CSS), Summary of Final Application of Sidley Austin LLP for Compensation for Services Rendered and Reimbursement of Expenses as Co-Counsel to the Official Committee of Unsecured Creditors for Period From June 19, 2012 Through January 5, 2017 (Bankr. D.Del. Feb. 2, 2017), ECF No. 3779, attached as Exhibit 6 to the Joost Declaration.

work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; and (6) the reaction of the class. *See Vizcaino*, 290 F.3d at 1048-50; *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1046-48. Each of the *Vizcaino* factors confirms that the requested 25% fee is fair and reasonable.

### 1.    The Results Achieved

Courts have recognized that the results achieved is an important factor in determining an appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1042. Lead Counsel submits that the $3.25 million Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded to trial.

In terms of potentially recoverable damages, the Settlement represents a recovery of approximately 27% of Lead Plaintiff's damages expert's estimate of maximum recoverable damages ($12 million)—an estimate based on an event study and a reasonable estimation of the number of damaged shares. Joost Decl., ¶ 6, n.6. This estimate assumes, however, that Lead Plaintiff prevailed on all claims, including the three alleged corrective disclosures. Had the Action continued, defendants would surely challenge the amount that the Settlement Class was allegedly damaged, and would have argued that damages were significantly less, if any. If defendants' arguments prevailed at summary judgment or trial (including defendants' loss causation contentions for any or all three of the alleged disclosures), the Settlement Class's damages would be substantially or completely diminished. Joost Decl., ¶¶ 7, 42.

Here, the Settlement, as a percentage of possible damages that could be proven at trial, is far higher than typically achieved in securities class actions. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 13-cv-1300-JLS, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement representing "approximately 8% of the maximum recoverable damages . . . .equals or surpasses the recovery in many other securities class actions"); *Destefano*, 2016 WL 537946, at *11 ("Settlement Amount represent[ing] approximately 14 percent of likely recoverable aggregate damages at trial" was "well within the range of percentages approved in other securities-fraud related actions . . ."); *McPhail v. Command Fin. Planning, Inc.*, No. 05-cv-00179-IEG, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding $12 million settlement recovering

7% of estimated damages fair and adequate); *Schuler v. Medicines Co.*, No. 14-cv-01149-CCC, 2016 WL 3457218, at *2, *8 (D.N.J. June 24, 2016) (approving $4,250,000 securities fraud settlement reflecting approximately 4.0% of estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals"). Additionally, this result far exceeds the median securities class action recovery as a percentage of damages, which was 5.2% in 2017. *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements - 2017 Review and Analysis*, Cornerstone Research (2018), attached as Exhibit 2 to the Joost Declaration.

Moreover, courts have recognized that, when counsel achieve a result for the class that is superior to the norm in comparable cases (as measured by the percentage of the class's possible damages recovered or other means), it is appropriate to increase the fee above the benchmark to reflect the quality of the result that counsel obtained. *See, e.g.*, *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1046 (finding that a settlement with a recovery of "approximately 9% of the possible damages, which is more than triple the average recovery in securities class action settlements . . . weighs in favor of granting the requested 28% fee"); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *5 (N.D. Cal. Aug. 3, 2016) (finding, in an antitrust case, that recovery of 20% of possible damages warranted "a modest increase over the Ninth Circuit benchmark," and awarding fees of 27.5% of common fund); *In re Giant Interactive Grp., Inc. Secs. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("the settlement ultimately reached in this case of approximately 16.5% of the aggregate loss of the class is higher than the typical recovery in many shareholder class actions, further justifying counsel's 33% fee request").

In light of these circumstances, the amount obtained is a very favorable result for the Settlement Class, and weighs heavily in favor of granting the requested fees.

### 2.     The Risks of Litigation

The risk of further litigation is also a key factor in determining an appropriate fee award. *Vizcaino*, 290 F. 3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Destefano*, 2016 WL 537946, at *17 (approving fee request and noting "as to the second factor . . . the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation"). As discussed in greater detail in the Joost Declaration, there were substantial challenges to succeeding in the litigation. While Lead Plaintiff and Lead Counsel

believe in the merits of their claims, there is no question that, had the Action continued, they would face formidable defenses to both liability and damages. Joost Decl., ¶¶ 36-38, 40-41. *See generally In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (noting "significant risks" that the PSLRA poses "to plaintiffs' ability to survive . . . summary judgment and prevail[] at trial . . .").

For example, Lead Plaintiff faced challenges to proving that defendants made any false or misleading statements. With respect to the challenged statements contained in the promotional articles at the center of this case, defendants vigorously argued in their motions to dismiss and during the Parties' settlement discussions that the articles' authors—not defendants—"made" the statements and therefore Lead Plaintiff would be unable to establish liability under the Supreme Court's decision in *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).[17] Joost Decl., ¶ 40. Although Lead Plaintiff alleged sufficient facts to establish maker liability as a pleading matter, Lead Plaintiff would bear a heavier burden on this issue at summary judgment and trial. *Id.*.[18] Defendants would also argue that the challenged statements were immaterial, asserting that the promotional articles were factually accurate and provided no new information to investors (except for the authors' failure to disclose that they were paid for their work) and that the statements in Lion's Sarbanes-Oxley certifications and risk disclosures were incomplete at most and, in any event, not misleading. *Id.* ¶¶ 7, 40.

Lead Plaintiff also faced challenges to proving loss causation and the full amount of the Settlement Class's damages. Defendants contended that Lead Plaintiff would be unable to link the allegations of defendants' misconduct to recoverable investment losses because the first two alleged corrective disclosures on May 14, 2014 and November 12, 2014, were insufficiently corrective and the third disclosure on April 10, 2017, did not result in a statistically significant reaction. Joost Decl.,

---

[17]  "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S. at 142-43.

[18]  *See Nobles v. MBNA Corp.*, No. 06-cv-03723-CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although "Plaintiff's claim has survived a motion to dismiss, [] success is not guaranteed if this matter were to proceed to jury trial.").

¶ 7. Lead Plaintiff also faced the significant risk of disaggregating losses and proving that the decline in the Company's stock price on May 14, 2014, was the result of Lion's announcement of the SEC subpoena, as opposed to its statements regarding its continuing losses in its Form 10-Q filed that same day. *Id*. ¶ 42.

Ultimately, the parties' arguments on loss causation and damages would have hinged upon extensive expert discovery and testimony. As the Court is doubtless aware, one can never comfortably predict how a jury or court will ultimately weigh the testimony of competing experts. *See In re Cendant Corp. Litig.*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"); *see also Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406-DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving requested attorneys' fee and noting the particular challenges of proving and calculating damages). Lead Counsel has sufficient experience to recognize that a trier of fact could be swayed by defendants' experts, who would undoubtedly seek to minimize or eliminate the amount of the Settlement Class's damages by showing that the losses were attributable to confounding information and/or factors other than the alleged misstatements and omissions, potentially limiting substantially, or wiping out completely, Lead Plaintiff's ability to prove damages. Joost Decl., ¶¶ 7, 39-42; *see, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming ruling granting defendants' motion for judgment as a matter of law on the basis of loss causation, overturning a jury verdict and award in plaintiff's favor).

Finally, Lead Plaintiff faced an additional risk that the Court, in connection with class certification (or, summary judgment), would accept defendants' assertion that the fraud-on-the-market presumption of reliance did not apply here given that Lion's common stock was not listed on NASDAQ from the start of the Class Period until February 26, 2015—the most crucial years of the Class Period. Acceptance of such an argument by the Court would narrow the certified class and limit recoverable damages. Joost Decl., ¶ 39.

The Settlement avoids the foregoing risks (and others), and obtains a substantial recovery for the Settlement Class. Thus, these factors support the fee request.

### 3.     The Skill Required and the Quality of Work

Another factor to consider in determining a fee award is the skill required and quality of work performed by counsel. *See In re Heritage Bond Litig.*, No. 02-ml-1475-DT, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award."). Indeed, "[t]he prosecution and management of a complex national class action requires unique legal skills and abilities." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1047. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano*, 2016 WL 537946, at *17.

Lead Counsel has extensive experience and a successful track record prosecuting securities class actions and other complex litigation throughout the country.[19] That experience and skill was demonstrated by the effective prosecution of this Action, culminating in the Settlement.

The quality and vigor of opposing counsel are also important in evaluating the services rendered by Lead Counsel. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Here, defendants were represented by very skilled attorneys from nationwide firms, including Sidley Austin LLP and Reed Smith LLP, with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. In the face of this formidable opposition, Lead Counsel was able to persuade Defendants to settle the case at both a point in the litigation and on terms that were highly favorable to the Settlement Class.

---

[19]  *See, e.g.*, *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 1:02-md-1335-PB (D.N.H.) (recovering a total of $3.2 billion from Tyco International, Ltd. and its auditor); *In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 1:09-md-02058-PKC (S.D.N.Y.) (recovering $2.425 billion for investors); *In re Wachovia Preferred Sec. and Bond/Notes Litig.*, No. 1:09-cv-06351 (RJS) (S.D.N.Y.) (obtaining a total recovery of $627 million for investors); *In re Lehman Bros. Sec. and ERISA Litig.*, No. 09-md-02017-LAK (S.D.N.Y.) (obtaining a combined recovery of over $615 million for investors); *In re Allergan, Inc. Proxy Violations Secs. Litig.*, No. 8:14-cv-02004-DOC-KESX (C.D. Cal.) (recovering $250 million for investors); *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, No. 1:11-cv-03658 (S.D.N.Y.) (securing jury verdict in plaintiff's favor); *In re S. Peru Copper Corp. S'holder Derivative Litig.*, Consol. No. 961-CS (Del. Ch.) (securing largest damage award in Delaware Chancery Court history in a shareholder derivative action in a bench trial resulting in a verdict exceeding $2 billion inclusive of interest); *In re Dole Food Co., Inc. Stockholder Litig.*, No. 8703-VCL (Del. Ch.) (securing largest post-trial class verdict in the merger context totaling $148 million for Dole stockholders). *See also* Kessler Topaz firm resume attached to the Kessler Declaration as Exhibit D.

### 4.    The Contingent Nature of the Fee and Financial Burden Carried by the Plaintiffs

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee.[20] It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects a premium to normal hourly billing rates. *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (*citing WPPSS*, 19 F.3d at 1299); *Destefano*, 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

Lead Counsel has received no compensation for its efforts in this Action, while investing over 1,800 hours for a total lodestar of $903,764.50, and outlaying the hard costs necessary for its prosecution. Joost Decl., ¶¶ 57, 68. And, additional work in connection with the Settlement and claims administration will still be required. Moreover, any fee award in this case has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses. Unlike defense counsel—who typically receive payment on a timely basis whether they win or lose—Lead Counsel sustained the entire risk that it would have to fund the expenses of this Action and that, unless Lead Counsel succeeded, it would not be entitled to any compensation whatsoever.

"[T]he risk of non-payment in complex cases [such as this] is very real." *In re Veeco Instruments Sec. Litig.*, No. 05-md-01695-CM, 2007 WL 4115808, at *20 (S.D.N.Y. Nov. 7, 2007). The commencement of a class action is no guarantee of success; these cases are not always settled, nor are plaintiffs' lawyers always successful, especially in the post-PSLRA era of securities litigation. There have been numerous hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, many years of excellent professional efforts of members of the plaintiffs' bar produced no fee to plaintiffs' counsel.

---

[20]    *See WPPSS*, 19 F.3d at 1299; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486-PJH, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1047.

Joost Decl., ¶ 62. *See e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009); *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel had incurred over $6 million in expenses and a lodestar of approximately $48 million (based on over 100,000 hours of time)).[21] Thus, there existed a very real risk that Lead Counsel (and the Settlement Class) would invest substantial resources and efforts and receive nothing. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499073, *11 (C.D. Cal. Oct. 5, 2010) (Finding multiplier of 1.5 "should be applied to increase the lodestar figure," in part because "class counsel handled the matter on a contingency basis [and] there was no guaranty that the claims would have been successful had the case proceeded to trial. Thus, the risk class counsel assumed in handling the case on a contingency fee basis supports an enhancement of the lodestar.").

### 5.  Awards Made in Similar Cases

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in Section I(C)(1) above, a 25% fee is the Ninth Circuit's benchmark fee award and well within the range of fee percentages awarded in comparable settlements. As discussed in Section I(C)(2) above, the resulting *negative* "multiplier" on Lead Counsel's lodestar underscores the reasonableness of the present fee request.

### 6.  The Reaction of the Settlement Class to Date

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, No. 08-cv-01520-SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1048. The Court-authorized Claims Administrator, JND, began disseminating Notice Packets to potential Settlement Class Members and nominees on December 21, 2018. *See* Cormio Decl., ¶¶ 5-8. As of February 21, 2019, Notice Packets have been mailed (or emailed) to more than 21,200 potential Settlement Class Members and their nominees. *Id.* ¶ 12. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PRNewswire*

---

[21]  *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming summary judgment in favor of defendant on loss causation grounds); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law following plaintiff verdict); *In re JDS Uniphase Secs. Litig.*, No. 02-cv-01486-CW (N.D. Cal. Nov. 27, 2007) (verdict for defendants); *In re Apple Comput. Sec. Litig.*, No. 84-cv-20148-JW,1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after the jury rendered a verdict for plaintiffs after an extended trial, the court overturned the verdict); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal).

in January 2019. *Id.* ¶ 13. The Notice informs Settlement Class Members that Lead Counsel would seek fees in an amount not to exceed 25% of the Settlement Fund. *See* Cormio Decl., Ex. A ¶¶ 5, 46. The Notice further advises Settlement Class Members of their right to object to the request for attorneys' fees and expenses. While the deadline for objecting is not until March 15, 2019, to date, there have been no objections to the fee and expense amounts set forth in the Notice. Joost Decl., ¶ 48.[22] In addition, Lead Plaintiff fully endorses Lead Counsel's fee and expense request. *See* Rabkin Decl., at ¶¶ 7-12.

## III.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also requests reimbursement of expenses, in the amount of $56,398.10, incurred in prosecuting and resolving the Action on behalf of the Settlement Class. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses for which Lead Counsel seek reimbursement are detailed in the Kessler Declaration, attached as Exhibit 4 to the Joost Declaration. The Kessler Declaration sets forth the specific categories of expenses incurred and the amounts, as well as provides additional details regarding certain expense categories. The types of expenses for which Lead Counsel seeks reimbursement were necessarily incurred in this Action and are routinely charged to classes in contingent litigation and clients billed by the hour. These include expenses associated with, among other things, service of process, travel, experts, and mediation. *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.*, No. 91-cv-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request of $100,000 in expenses that included "cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges"); *Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs and expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation

---

[22] Lead Counsel will address any objections received after this submission in its reply papers to be filed on March 29, 2019.

related expenses"); *Knight*, 2009 WL 248367, at *7 (granting reimbursement because "[a]ttorneys routinely bill clients for all of these expenses . . .").

The largest component of Lead Counsel's expenses was the cost of Lead Plaintiff's damages expert (i.e., $24,775.00, or approximately 44% of total expenses). Lead Counsel also incurred the cost of formal mediation with Mr. Melnick (i.e., $9,156.00, or approximately 16% of total expenses). Joost Decl., ¶ 72. Both of these costs were essential for the successful resolution of the Action.

Lead Counsel also incurred $13,164.86, or approximately 23% of its total expenses, for research. Joost Decl., ¶ 73. Modest travel was also required to prosecute this Action, and Lead Counsel incurred the related costs of rail and airline tickets, meals, and lodging in the amount of $3,484.32. *Id.* The other expenses for which Lead Counsel seek reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, process servers, document-reproduction costs, and delivery expenses. Accordingly, reimbursement of the requested expenses is reasonable and appropriate. *Id.* ¶ 74.

## IV.     LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(A)(4)

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also seeks reimbursement of $5,000 for Lead Plaintiff in connection with his representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Consistent with that statute, courts regularly reimburse lead plaintiffs and class representatives in PSLRA actions for their reasonable costs and expenses, including the time devoted to the Action. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming $5,000 awards to each class representative in securities class action); *McPhail*, 2009 WL 839841, at *8 (awarding reimbursement to six class representatives in amounts ranging from $923.20 to $10,422.30); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1173-74 (approving $40,000 reimbursement to lead plaintiff).

Here, Lead Plaintiff dedicated his personal time and effort to the prosecution of the Action on behalf of the Settlement Class. *See* Rabkin Decl., ¶¶ 4-5, 9-10. Lead Plaintiff, among other things: (i) regularly

communicated with attorneys from Kessler Topaz regarding the issues in the case, significant developments in the Action, and overall strategies for the prosecution of the case; (ii) reviewed significant court filings in the Action; (iii) reviewed periodic reports from Lead Counsel concerning the work being done; and (iv) conferred with Lead Counsel with respect to settlement and mediation efforts. *Id.*

The Notice advises Settlement Class Members that Lead Plaintiff may seek reimbursement of his reasonable costs not to exceed $5,000. To date, there have been no objections to this request. Joost Decl., ¶ 9 For the foregoing reasons, the modest award of $5,000 sought by Lead Plaintiff here is reasonable and justified under the PSLRA based on his active involvement in the Action, and should be granted.

## V.    CONCLUSION

Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 25% of the Settlement Fund and approve reimbursement of Lead Counsel's Expenses in the amount of $56,398.10, as well as the proposed award to Lead Plaintiff under the PSLRA in the total amount of $5,000.

Respectfully submitted,

Dated: February 21, 2019

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com

-and-

Geoffrey C. Jarvis (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gjarvis@ktmc.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*